THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DANIEL BAUMGARTNER | ) | |
| | ) | |
| *Plaintiff,* | ) | No. 24 C 1029 |
| v. | ) | |
| | ) | Chief Judge Virginia M. Kendall |
| THE CITY OF CHICAGO et al. | ) | |
| | ) | |
| *Defendant.* | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Daniel Baumgartner brought this suit against Defendant the City of Chicago ("the City") for religious discrimination and retaliation under Title VII of the Civil Rights Act, the First Amendment, and the Illinois Religious Freedom Restoration Act ("IRFRA"). Pending before the Court is the City's Motion to Dismiss. For the reasons discussed below, Defendants' motion [25] is granted in part.

**BACKGROUND**

Unless otherwise noted, the following facts are taken from Baumgartner's Amended Complaint (Dkt. 24). The facts are taken to be true for the purposes of this motion. Baumgartner has been a City of Chicago employee for the past 20 years. In October 2021, the City implemented a COVID-19 Vaccination Policy ("the Policy"), which outlined vaccination and testing reporting requirements for all City employees. Under the Policy, employees seeking an accommodation due to a disability, a medical condition, or a sincerely held religious belief, could seek an exemption

1

from the vaccination requirement. (Dkt. 26 at 2). City employees who were not fully vaccinated and had not received a religious or medical accommodation by December 31, 2021, would be placed in a non-disciplinary, no pay status. (Dkt. 26 at 2).

Baumgartner submitted a religious exemption request on December 20, 2021. Baumgartner objected to getting a vaccine, which was developed using abortion-derived cell lines. Baumgartner claims that his request was based on his belief "that human life is sacred; human life is a gift from God; and abortion is gravely wrong and contrary to the commandments and teachings of the Christian Bible." To receive an exemption, the City required Baumgartner to sign a Medical Attestation Form ("the Attestation Form"), in addition to the standard religious exemption request. This form required Plaintiff to refrain from taking a number of other medications, a list of which was attached, because those medications, like the vaccine, were supposedly tested on, or derived from fetal cell lines. Plaintiff submitted the required forms on December 21, 2021. The request was approved on January 26, 2022, but only after a protracted communication with Defendant, in which Defendant "coerced [Plaintiff] into accepting a change in the terms and condition of his employment," putting him through "emotional distress," and forcing him to pay an attorney (Dkt. 24 at 5).

Baumgartner primarily takes issue with the Attestation Form that the City required him to sign. The form required Baumgartner to agree that if the City granted his exemption, Baumgartner would refrain from taking certain other medications indefinitely, which like COVID-19 vaccinations, according to the City, were tested on and/or derived from fetal cell lines. (Dkt. 26 at 1). Further, the Attestation form states:

> [a]ny employee who is found to have engaged in misusing, abusing, and/or engaging in fraudulent activity in requesting, certifying, or

> taking a religious exemption may be subject to discipline, up to [and] including termination.

Presumably, if an employee was found to be taking any of the other medications on the City's form, he could be found to be falsely seeking a religious accommodation resulting in discipline. Baumgartner alleges that the form is "riddled with inaccurate and flatly erroneous information about the listed medications and their connection to fetal cells" But he was forced to sign it in order to receive his religious accommodation. (Dkt. 24 at 5). Further, though the City ended its COVID-19 Vaccination Policy, Baumgartner claims the City never renounced its authority to enforce the Attestation Form. The City has not denied that the Attestation Form is still enforceable. (*See* Dkt. 26).

Baumgartner complied with the Attestation by not taking any of the medications in order to avoid discipline or termination in spite of his disagreement with the medications being listed as be derived from fetal cell lines. Plaintiff cites numerous instances when abstaining from the listed medications caused him pain, discomfort, or emotional distress. To list a few examples: because Baumgartner was prohibited from taking aspirin, Tylenol, ibuprofen, or acetaminophen, he endured body/muscle pain without relief from medications; because Preparation H is prohibited, Plaintiff is forced to endure discomfort from hemorrhoids; the inability to take potentially life-saving medications, like aspirin, has caused Plaintiff severe stress, anxiety, and discomfort; the constant need to check a list of prohibited medications for over 900 days has made Plaintiff paranoid about inadvertently taking something on the list.

## **LEGAL STANDARD**

To survive a motion to dismiss for failure to state a claim, the complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Kaminski v.*

*Elite Staffing*, 23 F.4th 774, 776 (7th Cir. 2022) (quoting Fed. R. Civ. P. 8(a)(2)). Specifically, "a plaintiff must allege 'enough facts to state a claim that is plausible on its face.'" *Allen v. Brown Advisory, LLC*, 41 F.4th 843, 850 (7th Cir. 2022) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)).

At the same time, "allegations in the form of legal conclusions are insufficient to survive a Rule 12(b)(6) motion." *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 885 (7th Cir. 2012) (citing *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937). As such, "[t]hreadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937. Further, the moving party bears the burden of establishing the insufficiency of the plaintiff's allegations. *Marcure v. Lynn*, 992 F.3d 625, 631 (7th Cir. 2021).

## DISCUSSION

### I. Jurisdiction

At the outset, the City argues that Baumgartner's claim for injunctive relief is moot because the City granted him a religious exemption to the COVID-19 vaccine requirement in 2022. (Dkt. 26 at 4). "A question of mootness arises when . . . a challenged ordinance is repealed during the pendency of litigation, and a plaintiff seeks only prospective relief." *Fed'n of Advert. Indus. Representatives, Inc. v. City of Chicago*, 326 F.3d 924, 929 (7th Cir. 2003) (citing *Rembert v. Sheahan*, 62 F.3d 937, 940 (7th Cir.1995)). "Mootness strips a federal court of subject-matter jurisdiction." *Chicago Joe's Tea Room, LLC v. Vill. of Broadview*, 894 F.3d 807, 815 (7th Cir. 2018) (citing *DJL Farm LLC v. EPA*, 813 F.3d 1048, 1050 (7th Cir. 2016)). This is because "[a]

4

case that becomes moot at any point during the proceedings is 'no longer a "Case" or "Controversy" for purposes of Article III.'" *United States v. Sanchez-Gomez*, 584 U.S. 381, 385–86 (2018) (quoting *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013)). "In an action seeking only injunctive relief, [the live case-or-controversy] requirement ordinarily means that, once the threat of the act sought to be enjoined dissipates, the suit must be dismissed as moot." *Brown v. Bartholomew Consol. Sch. Corp.*, 442 F.3d 588, 596 (7th Cir. 2006).

Baumgartner's claim for prospective relief is not moot because the City has not renounced the enforceability of the Attestation Form. (*See* Dkt. 26). Defendant asserts that Baumgartner lacks an interest in adjudication "because the City granted him a religious accommodation;" but this entirely ignores Plaintiff's claim that complying with the Attestation Form continues to injure Baumgartner. (Dkt. 26 at 4); (Dkt. 24 at 8). Because the City has not affirmatively stated that the form is unenforceable, the threat that violating it (i.e., by taking one of the restricted medications) could impact Baumgartner's employment status ensures the suit remains ripe for adjudication. Moreover, despite the City having ended its COVID-19 Policy, finding Baumgartner's suit is moot "would leave the defendant free to return to its old ways." *Aslin v. Fin. Indus. Regul. Auth., Inc.*, 704 F.3d 475, 478 (7th Cir. 2013) (citing *United States v. W.T. Grant Co.*, 345 U.S. 629, 632–33 (1953). One can imagine a scenario, for example, when new circumstances arise, such as another vaccine mandate, and Baumgartner again must meet a certain level of religious observance to receive an exemption. In such a situation, the City could again enforce the Attestation Form. *Fed. Bureau of Investigation v. Fikre*, 601 U.S. 234, 243 (2024) (explaining that "[a] case does not automatically become moot when a defendant suspends its challenged conduct . . . ). Accordingly, Plaintiff still has "a legally cognizable interest in the outcome" of the Court's ruling, and his claim

for injunctive relief is not moot. (Dkt. 24 at 7–8); *Already*, 568 U.S. at 91 (quoting *Murphy v. Hunt*, 455 U.S. 478, 481 (1982)).

## II. Baumgartner's Claims

Baumgartner alleges religious discrimination and retaliation, in violation of Title VII, the First Amendment, and the Illinois Religious Freedom Restoration Act. (Dkt. 24 at 1). Specifically, Baumgartner contends that the City failed to provide religious accommodations, harassed him due to his religion, and retaliated against him when he engaged in a protected activity. (Dkt. 24 ¶¶ 16, 24, 20). Baumgartner seeks damages and a permanent injunction to stop the City from enforcing the Attestation Form. (Dkt. 24 at 1).

### a. Title VII

Plaintiff's alleges Defendant violated Title VII by both discriminating and retaliating against him based on his religion. (*Id.*)

#### i. Discrimination

The Seventh Circuit has made clear that the pleading standard under Title VII is a low bar. *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 780 (7th Cir. 2007); *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 827 (7th Cir. 2014) ("Title VII claims are not subject to a heightened pleading standard . . . [e]mployers are familiar with discrimination claims and know how to investigate them, so little information is required to put the employer on notice of these claims."). To establish a prima facie case of religious discrimination, a plaintiff must show: (1) that a bona fide religious observance or practice conflicts with an employment requirement; (2) that the plaintiff called the religious observance or practice to her employer's attention; and (3) that the religious observance or practice was the basis for an adverse employment decision. *Porter v. City*

*of Chicago*, 700 F.3d 944, 951 (7th Cir. 2012) *E.E.O. C. v. Ilona of Hungary, Inc.*, 108 F.3d 1569, 1575 (7th Cir.1996); *E.E.O. C. v. United Parcel Serv.*, 94 F.3d 314, 317 (7th Cir.1996).

Baumgartner has adequately pled the first and second elements of a Title VII discrimination case. By submitting a religious exemption request to the City, Baumgartner communicated (element one) to the City that getting the COVID-19 vaccine, which the City required of the employee, conflicted (element two) with his religious beliefs. (Dkt. 24 ¶¶ 13, 17).

The issue, then, is whether the City requiring Baumgartner to complete an Attestation Form amounts to an adverse employment decision. An adverse employment action is "a materially adverse change in the terms and conditions of employment [that is] more disruptive than a mere inconvenience or an alteration of job responsibilities." *Stockett v. Muncie Indiana Transit Sys.*, 221 F.3d 997, 1001 (7th Cir. 2000) (quoting *Crady v. Liberty Nat'l Bank and Trust Co.*, 993 F.2d 132, 136 (7th.Cir.1993)). Furthermore, "[a]dverse employment actions encompass more than simply the termination of employment or a decrease in salary." *Porter v. City of Chicago*, No. 08 C 7165, 2011 WL 1261133, at *7 (N.D. Ill. Mar. 31, 2011), aff'd, 700 F.3d 944 (7th Cir. 2012). Under the statute, an employee may bring an action when there is discrimination "'with respect to [the employee's] compensation, terms, conditions, or privileges of employment.'" *Whittaker v. N. Illinois Univ.*, 424 F.3d 640, 648 (7th Cir. 2005) (quoting *Washington v. Ill. Dep't of Revenue,* 420 F.3d 658 (7th Cir. Aug. 22, 2005)).

Baumgartner has sufficiently alleged that the City's response amounts to an adverse employment action. The City's response to Baumgartner's exemption request requires Baumgartner to abstain from using at least 28 commonly used medications including Tylenol, Pepto Bismol, Ibuprofen, and Benadryl. (Dkt. 24 ¶ 19); (Dkt. 26 at 22). By the Attestation Form's

own terms, if Baumgartner violates the form, presumably by taking one of the medications, Plaintiff "may be subject to discipline, up to [and] including termination." (Dkt. 26 at 21). Based on the Amended Complaint, the City has effectively forced Baumgartner to choose between abstaining from the use of these medications—which he disputes were even derived from aborted fetuses—and maintaining status as an observant Catholic to remain in good standing as employee and not be deemed a religious fraud. (*Id*. at 5). Thus, the City changed the terms of Baumgartner's employment when he requested a religious exemption. (Dkt. 24 ¶¶17–25) (Dkt. 26-2) (Exhibit B, City of Chicago COVID-19 Vaccine Religious Exemption Follow Up). Accordingly, Baumgartner has sufficiently pled the "adverse employment action" element, and his claims of religious discrimination in violation of Title VII can go forward.

### ii. Retaliation

Baumgartner also alleges retaliation under Title VII. (Dkt. 24 at 1). The standards for a retaliation claim under Title VII claim are "broader" than a discrimination claim. *Whittaker v. N. Illinois Univ.*, 424 F.3d 640, 648 (7th Cir. 2005); *see Poullard v. McDonald*, 829 F.3d 844, 856 (7th Cir. 2016) (explaining that "the challenged adverse action need not be one that affects the terms and conditions of employment, but it must be one that a reasonable employee would find to be materially adverse such that the employee would be dissuaded from engaging in the protected activity"). Title VII's anti-retaliation provision makes it "unlawful for an employer to 'discriminate against' an employee 'because he has opposed any practice made an unlawful employment practice' by the statute or 'because he has made a charge, testified, assisted, or participated in' a Title VII 'investigation, proceeding, or hearing.'" *Roney v. Illinois Dep't of Transp.*, 474 F.3d 455, 459 (7th Cir. 2007) (quoting 42 U.S.C. § 2000 e–3(a)); *see Brown v. Advoc. S. Suburban Hosp.*, 700 F.3d 1101, 1106 (7th Cir. 2012). "Pleading a retaliation claim under Title VII requires the

plaintiff to 'allege that she engaged in statutorily protected activity and was subjected to an adverse employment action as a result.' " *Carlson*, 758 F.3d at 828 (7th Cir. 2014) (quoting *Luevano v. Wal–Mart Stores, Inc.*, 722 F.3d 1014, 1029 (7th Cir.2013)). Further, [t]he protected activity must be specifically identified." *Carlson*, 758 F.3d at 828.

Baumgartner's allegations meet the pleading requirements for a retaliation claim. Baumgartner claims that he submitted a religious exemption request on December 20, 2021. In response, the City required him to sign the attestation agreement, which gave the City the right to terminate Baumgartner's employment if he took any of the listed medications. (Dkt. 24). Thus, Baumgartner pointed to the protected activity ("speaking out against the vaccine") and the City's allegedly gave a retaliatory response (compelling him to sign the Attestation Form). (Dkt. 24 ¶ 27). Accordingly, Plaintiff's Title VII retaliation claim can proceed.

### b. First Amendment

Plaintiff also argues that requiring him to complete the Attestation Form was retaliation against him for raising his religious objections to the COVID-19 Policy and that the form burdened his free exercise of religion, both in violation of the First Amendment. (Dkt. 24 at 5–7).

### i. Retaliation

To establish a 42 U.S.C. §1983 claim for retaliation in violation of the First Amendment, a public employee first must prove that her speech is constitutionally protected. *Kubiak v. City of Chicago*, 810 F.3d 476, 481 (7th Cir. 2016); *Swetlik v. Crawford,* 738 F.3d 818, 825 (7th Cir. 2013). For a public employee's speech to be protected under the First Amendment, the employee must establish that she spoke as a citizen on a matter of public concern. *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006); *Yatvin v. Madison Metropolitan School District*, 840 F.2d 412, 418–19 (7th Cir. 1988) (finding there was no First Amendment violation where plaintiff's speech was about a

matter of public concern because plaintiff only raised the issue for her own personal advancement). Whether a government employee's speech "addresses a matter of public concern depends upon 'the content, form, and context [of the speech] as revealed by the whole record.'" *McGreal v. Ostrov*, 368 F.3d 657, 672 (7th Cir. 2004); *Houskins v. Sheahan*, 549 F.3d 480, 491–92 (7th Cir. 2008) (finding employee's speech was not protected by the First Amendment because she was speaking on a matter "that serve[d] a private or personal interest, as opposed to a public one).

Baumgartner's §1983 claim for retaliation is insufficient to move forward. Baumgartner claims that the City retaliated against his speech (requesting a religious exemption for the COVID-19 vaccine policy) by forcing him to submit the Attestation Form. (Dkt. 24 ¶¶ 17–27). But, as a public employee, Plaintiff must allege facts that demonstrate he was speaking about a matter of public concern. While religious exemptions to a vaccine mandate are generally a matter of public concern, Baumgartner only sought an exemption for himself. (Dkt. 24 ¶ 26). Like in *Yatvin* where the Seventh Circuit found that the plaintiff's speech on sex discrimination was not a matter of public concern because it only concerned her own promotion at work, here, Baumgartner's speech is similarly not protected because it only concerns his own religious exemption. 840 F.2d at 419. Accordingly, Baumgartner's §1983 for retaliation is dismissed for failure to state a claim.

### ii. Free Exercise Clause

Baumgartner also alleges that requiring he complete and abide by the Attestation Form unconstitutionally impedes on his right to freely exercise his religion. (Dkt. 24 ¶¶ 36–43). Baumgartner argues that the City's requirement that he abide by the form made him choose between (i) getting the vaccine and being able to take the listed medications and (ii) not getting the vaccine but having to abstain from the listed medications—which he disputes were even developed using aborted fetus cells. (*Id*.) It is unclear from Baumgartner's complaint which

specific people who sought exemptions that he alleges did not have to complete the Attestation Form.[1] At the very least, Baumgartner claims that as applied to him, the Attestation Form was "a pretextual justification to unlawfully deny religious accommodations." (Dkt. 24 ¶ 35). The City does not thoroughly undermine Baumgartner's free exercise claim, which is its burden. *Marcure*, 992 F.3d at 631. On this ground alone, Baumgartner's claim could proceed. But, for the reasons below, Baumgartner alleges a plausible Free Exercise claim.

The Free Exercise Clause prohibits the government from "plac[ing] a substantial burden on the observation of a central religious belief or practice" without first demonstrating that a "compelling governmental interest justifies the burden." *St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 631 (7th Cir. 2007); *see also Sch. Dist. of Abington Twp., Pa. v. Schempp*, 374 U.S. 203, 223 (1963) (holding that "a violation of the Free Exercise Clause is predicated on coercion"). Therefore, unlike "neutral laws of general applicability," which trigger only rational basis review and correspondingly, a strong presumption of validity, *Lukaszczyk v. Cook Cnty.*, 47 F.4th 587, 602 (7th Cir. 2022), when a law "singles out" certain religious activities for "especially harsh treatment," the Court applies strict scrutiny. *Roman Cath. Diocese of Brooklyn v. Cuomo*, 592 U.S. 14, 18 (2020); *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah.*, 508 U.S. 520, 546 (1993); *Emp. Div., Dep't of Hum. Res. of Oregon v. Smith*, 494 U.S. 872, 885 (1990); *see also Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 450 (1988)

---

[1] In his amended complaint, Baumgartner alleges the City singled him out because "other co-workers who did not share Plaintiff's protected class were granted religious exemptions." (Dkt. 24 at 6). In his response brief, Baumgartner states "the City's willingness to grant exemptions to non-Catholic employees without subjecting them to the same level of harassment and scrutiny starkly reflects clear religious bias." (Dkt. 31 at 14).

11

("[the] Court has repeatedly held that indirect coercion or penalties on the free exercise of religion, not just outright prohibitions, are subject to scrutiny under the First Amendment."). A government policy can survive strict scrutiny only if it advances "interests of the highest order" and is narrowly tailored to achieve those interests. *Fulton v. City of Philadelphia, Pennsylvania*, 593 U.S. 522, 541 (2021) (quoting *Church of Lukumi*, 508 U.S. at 546).

While the precise details of the exemption process make it difficult to determine the appropriate scrutiny level to apply, Baumgartner provides enough facts that the Attestation Form imposes, at least plausibly, an unjustifiably substantial burden on Baumgartner's free exercise of religion for the claim to move forward. Baumgartner alleges that only those who sought exemptions from the City's COVID-19 Policy because they objected to "abortion and/or fetal cell lines used in the vaccine process" had to complete the form and abstain from taking a list of 28 medications. (Dkt. 26-2) (Exhibit B); (Dkt. 24 ¶ 39). He adds that the listed drugs had, at best, a tenuous connection to fetal cells. (Dkt. 24 ¶ 36). Assuming Baumgartner's claims are true, which is required at the pleading stage, it would mean that the Attestation Form amounts to a sort of purity test that leaves those like Baumgartner with a choice: continue abstaining from the listed drugs or risk losing status as an observant Catholic if another situation requires him to need a religious exemption. (Dkt. 24 at 2–4). Such a policy could plausibly run afoul of the First Amendment. *See Kane v. De Blasio*, 19 F.4th 152, 169 (2d Cir. 2021) (finding that policy requiring employee to have beliefs, which are "in line with the tenets of [] religious or spiritual faith" of a religious leader, is not neutral and violates the First Amendment).

By not explaining the details of who was and was not required to complete the Attestation Form, the City does little to undermine Baumgartner's allegations. Instead, the City merely contends that had Baumgartner truly been an observant Catholic with an objection to the vaccine

based on aborted fetal cells in the vaccine process, Baumgartner would not have had a problem abiding by the form—thus, it would not have been a substantial burden. (Dkt. 26 at 3). But considering that "'[t]he Free Exercise Clause bars even subtle departures from neutrality on matters of religion.'" *Calvary Chapel Dayton Valley v. Sisolak*, 140 S. Ct. 2603, 2605 (2020) (Alito J. Dissenting) (citing *Masterpiece Cakeshop, Ltd. v. Colorado Civil Rights Comm'n*, 138 S.Ct. 1719, 1731 (2018)), this is insufficient to defeat Baumgartner's claim at this stage. While an inquiry into the sincerity of Baumgartner's religious beliefs is necessary to determine Plaintiff's sincerity, *Childs v. Duckworth*, 705 F.2d 915, 921 n.7 (7th Cir. 1983), the City's allegedly strident approach could be too uncompromising to accommodate the breadth of its employees' religious viewpoints. Accordingly, viewing facts most favorably to Baumgartner as the Court is required, Plaintiff's claim can move forward.

### c. Illinois Religious Freedom Restoration Act

Much of the above analysis also applies to Plaintiff's claims that the City's conduct violated the Illinois Religious Freedom Restoration Act ("IRFRA"). (Dkt. 24 at 1). Pursuant to IRFRA:

> "[The] [g]overnment may not substantially burden a person's exercise of religion, even if the burden results from a rule of general applicability, unless it demonstrates that application of the burden to the person (i) is in furtherance of a compelling governmental interest and (ii) is the least restrictive means of furthering that compelling governmental interest."

775 ILCS 35/15. In the IRFRA context, "the hallmark of a substantial burden on one's free exercise of religion is the presentation of a coercive choice of either abandoning one's free exercise of religious convictions or complying with the government regulation." *Diggs v. Snyder*, 333 Ill. App. 3d 180, 194–95 (5th Dist. 2002). "[W]hether a burden is substantial . . . is ordinarily an issue of

fact . . ." *World Outreach Conf. Ctr. v. City of Chicago*, 591 F.3d 531, 539 (7th Cir. 2009) (citations omitted). Further, a plaintiff may also show a substantial burden when "the state conditions receipt of an important benefit upon conduct proscribed by a religious faith ... thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Thomas v. Review Bd. of Indiana Employment Sec. Division*, 450 U.S. 707, 717–18 (1981).

Because Plaintiff has alleged sufficient facts to show the Attestation Form amounted to a coercive tactic, which forced him to choose between abandoning his religious convictions (by taking the vaccine) he has plead sufficient facts to make out an IRFRA claim. Accordingly, Baumgartner's IRFRA claim can proceed.

### d. Illinois Tort Immunity Act

The City argues that Baumgartner's claims are barred by the Illinois Tort Immunity Act ("ITIA") because their damages were caused by the issuance of a public health order. (Dkt. 26 at 13–14). The ITIA provides protection to local governments for liability arising out of the adoption of a law or enactment, discretionary policy decisions, and policy decisions about actions to promote the public health of the community. *See* 745 ILCS 10/2-103, 10/2-201, 10/2-109, 10/6-104(a).

The City's problem is that it does not reconcile caselaw, which clearly states that the ITIA does not extend to violations based on federal law. *Anderson v. Vill. of Forest Park*, 238 Ill. App. 3d 83, 91 (1992) (holding that "even if the [Illinois] Tort Immunity Act technically covers Section 1983 claims, a state immunity defense cannot control a federal statute."); *Horwitz v. Bd. of Educ. of Avoca Sch. Dist. No. 37*, 260 F.3d 602, 618 (7th Cir.2001) (finding that the ITIA a immunized school board from defamation but not First Amendment claims). Without any explanation for why

these cases are not controlling, the ITIA cannot bar Plaintiff's Title VII or First Amendment claims.

As for Baumgartner's IRFRA claim, the City likewise does not point to any specific caselaw showing the ITIA immunizes it from IRFRA claims. (*See* Dkt. 26 at 14). Instead, it attempts to show that the COVID-19 Policy was discretionary because each employee's exemption request was reviewed on a case-by-case basis and thus, the ITIA should bar Baumgartner's claims. (*Id.*) While the COVID-19 Policy and exemption process may have been a discretionary action to promote public health, Plaintiff's main claims are not based on any denial of the exemption— indeed, his request was eventually granted. Plaintiff's claims are based on his alleged injuries from having to abide by the Attestation Form (Dkt. 24 at 4). Further, other district courts have found that challenges to employment policies relating to the vaccine mandate are not covered by the ITIA. *Carrero v. City of Chicago*, No. 23-CV-00650, 2024 WL 22099, at *10 (N.D. Ill. Jan. 2, 2024).

In any case, immunity under the Illinois Tort Immunity Act is an affirmative defense. *Sablik v. Cnty. of De Kalb*, 2019 IL App (2d) 190293, ¶ 12 (Ill. App. 2 Dist. 2019). "The Seventh Circuit has repeatedly cautioned that, because 'immunity defense[s] usually depend[ ] on the facts of the case, dismissal at the pleading stage is inappropriate.'" *Hayes v. Bd. of Educ. of City of Chicago*, 629 F. Supp. 3d 816, 825 (N.D. Ill. 2022) (Kness, J.) (citation omitted). The City has not shown that applying an affirmative defense to dismiss Baumgartner's claim would be proper at this stage. For instance, further factual development is required to determine the details surrounding the exemption procedure at issue and whether other employees who applied for non-

15

religious exemptions had to complete similar attestations forms. Accordingly, the Court denies the City's motion to dismiss under the Illinois Tort Immunity Act.

### e. Other Claims

Regarding Plaintiff's claim to permanently enjoin the City from enforcing the Attestation Form, neither party explicitly analyzes the elements required. (*See generally* Dkts. 24; 26). To demonstrate a need for injunctive relief, a plaintiff must show (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). Given that Plaintiff demonstrated an ongoing injury, and Defendant failed to address the claim at all, this claim can go forward.

Finally, Baumgartner's claim for punitive damages against the City must be stricken. Under *City of Newport v. Fact Concerts, Inc.*, punitive damages are unavailable against units of local government for violations of claims brought under Section 1983. 453 U.S. 247 (1981). Further, under Illinois law, punitive damages are also unavailable against local governments. *See* 745 ILCS 10/2-102.

## **CONCLUSION**

For the reasons set forth above, Defendants' Motion to Dismiss [25] is granted in part. Plaintiff is granted leave to amend his Complaint consistent with this Opinion.

_____
Virginia M. Kendall
Chief United States District Judge

Date: December 13, 2024